UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                   No. 1:20-cr-183

        vs.                                          Hon. Robert J. Jonker
                                                       Chief United States District Judge

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.,
DANIEL JOSEPH HARRIS,
KALEB JAMES FRANKS, and
BRANDON MICHAEL-RAY CASERTA,

        Defendants.
_____/

## GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS' ATTEMPT TO ADMIT HEARSAY STATEMENTS

The defendants have indicated their intent to offer their own hearsay statements at trial. Admitting these statements would permit the defendants to effectively testify without being subject to cross-examination. Because they are not within any recognized hearsay exception or exemption, they should be excluded.

### FACTS

1.    Between June and October 2020, the defendants conspired to kidnap the Governor of Michigan. (R. 172: Superseding Indictment, PageID.961.) Defendants Harris, Franks, and Caserta belonged to an anti-government "militia" group known as the Wolverine Watchmen. (*Id.*, PageID.962). At a few early meetings before they had committed to the plan, some defendants either made or

agreed with comments skeptical of "offensive" operations against the government.[1] For example:

    a. On July 7, 2020, members of the Wolverine Watchmen met at Paul Bellar's house in Milford, Michigan. During their recorded conversation, an attendee not charged in this case said he was "not interested in taking people out of their homes," or "black bagging politicians," and wanted the group to take a "defensive" posture. Harris and Franks expressed agreement in that setting, which included individuals they could not fully trust.[2] In the same conversation, the participants discussed the possibility that "Feds" could slip into an improperly vetted group.

    b. On August 9, 2020, Fox, Franks, Harris, Garbin and other Wolverine Watchmen met for a field training exercise in Munith, Michigan. When Fox asked the group, "How's everyone feel about kidnapping tyrants?" Garbin and Franks expressed skepticism that they could succeed without being caught. In an encrypted chat the next day, however, Franks said "[I]f we're spear heading all these ops we ain't coming back bois. Tie up your loose ends." Harris added, "Id rather not be the

---

[1] The government will present evidence that on various occasions thereafter, the defendants said and did things showing they actually intended to carry out the plot. The Court is familiar with much of that evidence from previous pleadings, and it will not be repeated for the purposes of this motion.

[2] These included Bellar, who had admitted sharing details of their tactical plans with his girlfriends, and Solomon Clark, who had earlier incited suspicion by naming his phone's Bluetooth connection "LE undercover." Clark was not actually an undercover law enforcement agent or source.

tip of the spear until I have a legit mission to train for. I don't want to go into shit completely in the dark."

2. The defendants' fears about being infiltrated by informants, or exposed by careless listeners, were a constant theme in their discussions. For example, in August, 2020, Wolverine Watchman Paul Bellar left "Boogaloo" related documents in his vacated apartment, prompting police inquiries. Harris, Franks, Caserta, Garbin and other Wolverine Watchmen met on August 23, 2020 at Harris's residence in Lake Orion to tighten their operational security. (R. 172: Superseding Indictment, PageID.964.) The defendants brought personal identification documents to establish they were not law enforcement agents or informants, and then switched to a new encrypted chat application that Harris advised could be deleted in case of FBI contact. (*Id.*)

3. At a motion hearing on September 17, 2021, Franks characterized some of the comments above as "actually favorable to the defense," and stated his intent to offer them as evidence in the defense's case-in-chief. (R. 356: Mot. Hr'g Tr., PageID.2253.) When asked by the Court whether such statements would constitute inadmissible hearsay, the defendants advanced various theories of admissibility. These included the hearsay exemption for prior consistent statements (PageID.2273), the hearsay exception for state of mind (*Id*), and the rule of completeness[3] (*Id.*, PageID. 2254).

---

[3] Counsel referred to "Rule 104," but the context of the colloquy suggests he was referring to Fed. R. Evid. 106, which codified the common law rule. (R. 356: Mot. Hr'g Tr., PageID.2254-2262.)

LAW AND ARGUMENT

1. *<u>Hearsay generally</u>*

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is not admissible unless otherwise provided by a federal statute, the rules of evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 802.

"Rule 802 is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005), citing *Williamson v. United States*, 512 U.S. 594, 598 (1994). In contrast, "these dangers are minimized for in-court statements— [because of] the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent t to cross-examine." *Id.* (internal quotations omitted.)

2. *<u>Admissions of a party opponent</u>*

An opposing party's own statement is not hearsay if offered against him. Fed. R. Evid. 801(d)(2). "Federal Rule of Evidence 801(d)(2) excludes admissions of a party-opponent … from the definition of hearsay because the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial." *McDaniel*, 398 F.3d at 545. "The theory of admissibility of a statement of a party

4

opponent is that it is ridiculous for a party-litigant to complain that his or her out-of-court statement is not subject to the safeguard of cross-examination. The party has but to take the stand." *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1109 (C.D. Cal. 1999)

"Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses. Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *McDaniel*, 398 F.3d at 545. (citation omitted, emphasis in original).

Statements of co-conspirators are also not hearsay if offered against the party. Fed. R. Evid. 801(d)(2)(E). "Declarations of one conspirator may be used against the other conspirator not present on the theory that the declarant is the agent of the other." *Lutwak v. United States*, 344 U.S. 604, 617 (1953). A party cannot introduce his *own* statement through a co-conspirator, however, because all subsections of Fed. R. Evid. 801(d)(2) require the statements be offered against an opposing party.

The defendants intend to offer their own prior statements to suggest they either lacked intent, or were not predisposed to commit the offense. To do so within the framework of the rules, they must testify subject to cross examination. Only then can the jury observe the declarant's demeanor, and determine whether the

5

earlier statements were truthful, taken out of context, or inexplicably contradicted by later statements and actions.

3. *Prior consistent statements*

A declarant-witness's prior statement is not hearsay if "the declarant testifies and is subject to cross-examination about a prior statement, and the statement … is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it." Fed. R. Evid. 801(d)(1)(B)(i).

The proponent of evidence under this hearsay exemption "must establish four elements under Rule 801(d)(1)(B): (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996). *See also United States v. Snell*, No. 08-299-01, 2009 U.S. Dist. LEXIS 18851, at *7-8 (E.D. Pa. Mar. 10, 2009) (self-exculpating prior statement of testifying defendant inadmissible where declarant had motive to avoid prosecution at the time of the prior statement).

Even when the proponent testifies at trial, a prior statement is only admissible to rebut a suggestion that the in-court statement is a recent fabrication. *Tome v. United States*, 513 U.S. 150, 157-58 (1995). "A consistent statement that

predates the motive [to lie] is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive. By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved." *Id.*, citing McCormick on Evidence § 49, p. 105 (2d ed. 1972) ("When the attack takes the form of impeachment of character, by showing misconduct, convictions or bad reputation, it is generally agreed that there is no color for sustaining by consistent statements. The defense does not meet the assault.")

The defendants cannot introduce their own prior statements under Rule 801 unless they testify, and are cross-examined with a charge of recent fabrication. Even then, only those prior consistent statements directly responsive to the impeached testimony is admissible. Cross-examination on other subjects (e.g., criminal history, or later statements of intent) will not trigger the hearsay exemption.

### 4. *State of Mind*

Certain statements are excepted from the rule against hearsay, regardless of whether the declarant is available as a witness. Fed. R. Evid. 803. These include "a statement of the declarant's then-existing state of mind, such as motive, intent, or plan…but not including a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3).

To admit evidence under § 803(3), "three requirements must be satisfied: (1) the statements must be contemporaneous with the event sought to be proven; (2) it must be shown that the declarant had no chance to reflect — that is, no time to

fabricate or misrepresent his thoughts; and (3) the statements must be shown to be relevant to an issue in the case." *Duka v. United States*, No. 13-3664 (RBK), 2015 U.S. Dist. LEXIS 132443, at *68 (D.N.J. Sep. 29, 2015. (citing *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986)). Importantly, "there must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts." *Id*. at *68-69.

"Statements admitted to show state of mind under Rule 803(3) cannot be offered to prove the truth of the underlying facts asserted." *United States v. Palma-Ruedas*, 121 F.3d 841, 857-58 (3d Cir. 1997) (defendant's prior statement "it's nice to meet you" inadmissible under § 803(3) to show he did not previously know his co-conspirator.) Admitting "state of mind" evidence for the truth of the matter would allow § 803(3) to "devour the [hearsay] rule." *Duka,* at *68.

The terrorism defendant in *Duka* offered a recording of himself telling an informant, "Jihad [is] impractical if not impossible within the United States" to show that he lacked the intent. *Id*. at *71. But Duka had already expressed concern that he was potentially talking to FBI agents. *Id*. The court therefore excluded the recording, because "there were potential circumstances in play to suggest a motive for [him] to misrepresent his state of mind."

The defendants offer essentially the same hearsay as Duka, to suggest that at least in July 2020, they thought that kidnapping politicians was impractical. But they had the same motive as Duka to misrepresent their state of mind – the fear that their organization had been infiltrated by FBI agents. Moreover, the

8

statements would be admitted to prove the truth of the underlying facts asserted, without the test of cross-examination. Allowing a statement to the effect that "my state of mind was 'not guilty'" would permit the exception to devour the hearsay rule.

### 5. *The Rule of Completeness*

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time. Fed. R. Evid. 106.

The doctrine of completeness, partially codified in Federal Rule of Evidence 106, "allows a party who is prejudiced by an opponent's introduction of part of a document, or a correspondence, or a conversation, to enter so much of the remainder as necessary to explain or rebut a misleading impression caused by the incomplete character of that evidence." *United States v. Crosgrove*, 637 F.3d 646, 661 (6th Cir. 2011), citing *United States v. Howard*, 216 F. App'x 463, 472-73 (6th Cir. 2007) (internal citations and quotations omitted).

The Sixth Circuit has stated, however, that the doctrine "does not make inadmissible evidence admissible." *Id.*; *see also United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982); *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). "Therefore, unless the messages [the proponent seeks] to introduce [are] truly necessary to correct a misleading impression caused by the 'incomplete character' of the portion of the statement admitted, the evidence [is] not admissible." *Crosgrove*,

9

637 F.3d at 661. (Instant messages sent weeks before admitted conversation not admitted).

The failure to admit such evidence does not violate the Confrontation Clause or the so-called "rule of completeness." *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) ("[T]he rule of completeness is not designed to make something admissible that should be excluded. Right or wrong, this court has acknowledged that under *Costner*, exculpatory hearsay may not come in solely on the basis of completeness.") (quotations and citations omitted).

The statements the defendants intend to introduce will not be necessary to correct any mistaken impression left by other parts of the same recordings. On the contrary, the government expects to prove some defendants were initially skeptical of Croft and Fox's plans; but their confidence and commitment increased with training, reconnaissance, and preparation.

For the reasons stated above, the government requests the Court exclude any self-exculpating hearsay statements offered by the defendants.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: December 17, 2021     */s/ Nils R. Kessler*
NILS R. KESSLER
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
*nils.kessler@usdoj.gov*