UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       No. 1:20-cr-183

      vs.                               Hon. Robert J. Jonker
                                          Chief United States District Judge

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.,
DANIEL JOSEPH HARRIS,
KALEB JAMES FRANKS, and
BRANDON MICHAEL-RAY CASERTA,

        Defendants.
_____/

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
## AND PRECLUDE IMPROPER IMPEACHMENT

The defendants intend to offer unsubstantiated claims that an FBI agent orchestrated an entrapment scheme for his private pecuniary gain, that another FBI agent was accused of committing perjury by a defense attorney in an unrelated case, and evidence that a former agent was terminated after being charged with domestic assault. In addition, at least one defendant wants to offer Facebook messages the former agent allegedly posted, critical of the last president. The claims are intended to invite a verdict on an improper basis and to distract the jury with irrelevant collateral issues. Whatever relevance this material might have is substantially outweighed by the risk it will mislead and confuse the jury.

FACTS

1. The defendants are charged with, among other things, conspiring to kidnap the Governor of Michigan. (R. 172: Superseding Indictment). Dozens of state and federal law enforcement officers and agents investigated the case, including Special Agents Jayson Chambers and Henrik Impola of the FBI. Among other duties, Agents Chambers and Impola were handlers for an informant hereinafter referred to as "Dan."

2. In late August, 2021 the defendants submitted supplementary motions to compel discovery, alleging misconduct by SA Chambers. (R. 315: Def's Joint Supplement; R. 316: Def's Second Joint Supplement.) They quoted an article from internet news site BuzzFeed.com, which reported Chambers had incorporated a security consulting firm ("Exeintel"), and someone connected to Exeintel had posted "enigmatic tweets" about the pending arrests in this case. (PageID.1865.) The defendants asserted that "if the story is correct," SA Chambers and "Dan" had entrapped their clients to make money. (PageID.1870.) The defendants also suggested that SA Chambers might have violated FBI policy by seeking a new job without permission.

3. SA Chambers has never denied filing the incorporation papers for Exeintel, which was intended to be a security consulting firm he would join after leaving the FBI. SA Chambers decided to remain with the FBI, and left the Exeintel project without ever making a deal with a client or deriving any financial benefit. The BuzzFeed story (and the defendants) implied that SA Chambers leaked

confidential law enforcement information in this and/or other cases to an Exeintel-related Twitter user, to drum up business by making the company look prescient. The defendants have produced no evidence, however, showing SA Chambers had a financial stake in the outcome of this case.

4. At a hearing on September 2, 2021, this Court found the defendants' claims about SA Chambers were based on "this BuzzFeed article and very little else." (R. 338: Mot. Hr'g Tr., PageID.2089.) At the same hearing, one defendant also suggested SA Impola was a perjurer, citing an accusation lodged by another defense attorney in an unrelated case. (*Id.*, PageID.2046.) The Court in that case made no finding of misconduct against SA Impola, and the defendants did not suggest it had. This Court denied the defendants' motions to compel additional discovery. (R. 324: Minutes of Hr'g, PageID.1940.)

5. In an e-mail dated Nov. 18, 2021, counsel for defendant Croft claimed he had "come into possession of information which directly supports that Chambers … was trying to monetize [Exeintel] for his own personal gain." In subsequent e-mails, counsel has expressed an intent to offer such evidence at trial.

6. In response to a government discovery request under Fed. R. Crim. P. 16(b), Croft provided a packet of partially redacted documents.[1] The packet was

---

[1] Croft at one point represented that he had additional information that would be divulged closer to trial, but has since declined to answer whether he has any additional evidence to support his claims. This Court granted the defendants' unopposed motion for a subpoena directing Twitter to divulge pertinent records. (R. 321: Order, PageID.1937.) The defendants have not provided any Twitter records in response to the Government's Rule 16(b) request.

comprised of a flyer for Exeintel, some e-mail correspondence between SA Chambers and a potential Exeintel partner, a quote for hypothetical services Exeintel could provide, and a resume listing some noteworthy cases SA Chambers had worked on at the FBI. The documents include no references to the instant case, and no details about any of the previous cases Chambers worked on.

7. In an e-mail dated December 13, 2021, counsel for Croft stated, "I note that we have received no disclosure relating to [Special Agent Richard] Trask's publicly reported termination." Trask was charged by state authorities earlier this year, after an alleged domestic assault entirely unrelated to this case. Trask was also not the handler for any informant in this case, and had no personal interaction with the defendants other than assisting in the videorecorded interview of Fox. Croft's e-mail suggests he intends to offer the allegations against Trask at trial.

8. In an e-mail dated December 16, 2021, counsel for Fox asked whether the government would seek to exclude messages Trask allegedly posted on Facebook, which were purportedly critical of the former president. The messages, if indeed they were posted by Trask, do not discuss this case.

## LAW AND ARGUMENT

### a. *Evidence tending to confuse or mislead the jury*

Evidence is relevant if it has any tendency to make a fact more or less probable, and that fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403.

Evidence intended to convince the jury to acquit on an improper basis is properly excluded under Rule 403. *United States v. Roberts*, 919 F.3d 980, 985 (6th Cir. 2019) (evidence that others sold stolen goods with impunity on eBay properly excluded in trial for selling stolen goods.) In *United States v. Laguna*, 693 F.3d 727 (7th Cir. 2012), the defendant proffered evidence that the government condoned his offense by failing to pursue him for previous violations. The court properly excluded it because evidence that would "invite the jury to acquit even if the government satisfied each element of the charged offense risks jury nullification." *Id*., at 730-31, citing *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly.")

The risk of misleading the jury is especially acute where the proposed evidence relies on insufficiently supported inferences. *See United States v. Espinoza-Baza*, 647 F.3d 1182 (9th Cir. 2011). In *Espinoza*, the defendant sought to introduce evidence that his grandfather was a U.S. citizen, giving rise to an inference that he might have obtained derivative citizenship. *Id*., at 1189. The court of appeals held that "for the jury to plausibly draw that inference, additional facts [were] necessary," and agreed that the evidence, "if admitted, would have created a substantial risk of confusion and … might have caused the jury to base its verdict

5

on highly speculative evidence rather than [the defendant's] guilt or innocence." *Id.*, at 1190 (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Several circuit courts have approved the exclusion of evidence like that proposed by the defendants. In *United States v. Dakins*, 872 F.2d 1061 (D.C. Cir. 1989), the defense was entrapment. The defendant offered evidence that an undercover officer did nothing to intervene while he was being beaten, to show the officer was "so unscrupulous as to allow an informant to entice an unwilling subject to engage in a criminal enterprise." *Id.*, at 1063. The court of appeals held that even assuming the appellant's "tenuous premise," the proffered evidence "could have served to prejudice the jury against the police in general [and] diverted their attention from the issues relating to the appellant's own guilt or innocence." *Id.*

In *United States v. Woods*, 978 F.3d 554 (8th Cir. 2020), the district court properly granted a motion *in limine* to exclude evidence that an agent had destroyed data unrelated to the case. The defendants claimed the evidence was necessary to properly examine a cooperating witness who had interacted with the agent, and to show that "the entire investigation and any cooperators were potentially tainted by the actions of a corrupt lead investigator." *Id.*, at 561.

The court of appeals noted that the government was not seeking to preclude cross examination of the cooperating witness about his motives for testifying, the recordings he had made, or his interactions with the agent. *Id.* The court agreed that even if the agent's misconduct was somehow relevant to the pending criminal charges, it was substantially outweighed by the risk of confusion, wasted time and

6

prejudice arising from a "mini-trial" of the agent's actions. *Id*. The court of appeals observed the risk was "obvious" that "the jury would seek to punish [the agent] rather than fairly judge the evidence presented at trial." *Id.*, at 567.

In *United States v. Malpeso*, 115 F.3d 155 (2d Cir. 1997), the defendant sought to introduce evidence that an FBI agent leaked confidential law enforcement information to a member of a rival organized crime faction. The court held,

> [E]ven if the evidence were of some marginal relevance, that relevance is far outweighed by the risk of prejudice. The likely (and presumably intended) effect of admitting evidence of the [leak] issue would have been to shift the focus away from the relevant evidence of the defendants' wrongdoing to the tangentially related misdeeds of one government agent. Such a diversion not only risked needlessly delaying the trial, but also created the very real possibility that the jury would improperly discredit the government's case in reaction to [the defendant's] allegedly gross misconduct. To the extent evidence of the [leak] issue may have been relevant, it was not improper for the district court to exclude the evidence under Rule 403.

*Id.*, at 163.

The presumably intended purpose for which Croft and his co-defendants proffer the material in question is to shift the focus away from their wrongdoing and persuade the jury to punish the FBI for perceived personal or policy infractions, or political opinions, instead. The information is of marginal relevance at best and invites the jury to decide the case on improper grounds. Specifically, the defendants hope to capitalize on disinformation painting the FBI as a corrupt "deep state" institution.[2]

---

[2] For example, the conspiracy theory that the FBI instigated the January 6, 2021 attack on the U.S. Capitol to entrap otherwise law-abiding citizens has been actively promoted by certain media outlets. *See, e.g.*, https://www.politifact.com/factchecks/2021/nov/04/tucker-carlson/tucker-carlsons-conspiracy-theory-about-fbi-and-ja/

7

The evidence carries little probative value in a Rule 403 balancing test. Like the unsupported claims in *Espinoza-Baza*, there are insufficient facts to link the Exeintel claims to any pertinent defense theory. SA Chambers filed incorporation papers for a business, communicated with a potential partner about matters unrelated to this case, and listed his experience on his resume. Even assuming for the sake of argument that SA Chambers leaked law enforcement information to Exeintel (like the agent in *Malpeso*) that evidence simply does not support the inference that dozens of FBI agents, State Troopers and other law enforcement personnel set up innocent people for his private pecuniary gain.

Richard Trask's domestic assault charges and supposed Facebook posts, and the unfounded allegations against SA Impola also have little probative value, but carry a high risk of unfair prejudice, confusion, and misleading the jury. As the court observed in *Dakins* and *Woods*, they could prejudice the jury against the FBI in general and divert their attention from adjudicating the defendants' guilt or innocence.

The government does not seek to preclude cross-examination of Dan or other informants about their motives for testifying, the recordings they made, or their interactions with their handlers. The proffered claims about Exeintel, SA Impola, and Richard Trask however, should be excluded under Rule 403.

b. *<u>Improper Impeachment</u>*

Federal Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." However, that

8

rule is subject to some limitation. "A party may not call a witness knowing the witness will not provide substantive testimony but only to impeach the witness" with evidence that would otherwise be inadmissible. *United States v. Woody*, 250 F. App'x 867, 882 n.7 (10th Cir. 2007).

The Sixth Circuit has also held a party "cannot impeach a witness that it knows will give adverse testimony merely to get in evidence that would otherwise be inadmissible." *United States v. Moore*, 495 F. App'x 680, 686 (6th Cir. 2012) (citing *United States v. Morlang*, 531 F.2d 183 (4th Cir. 1975)). "The *Morlang* court's 'primary purpose' test looks to a party's intent in calling a witness, and prohibits impeachment of that witness as a mere subterfuge to get before the jury evidence not otherwise admissible." *United States v. Buffalo*, 358 F.3d 519, 523 (8th Cir. 2004). *See also Evans v. Verdini*, 466 F.3d 141, 146 (1st Cir. 2006); *United States v. Miller*, 664 F.2d 94, 97 (5th Cir. 1981).

The government does not intend to call Chambers, Impola, or Trask as witnesses. But, a defendant might call them for an ostensibly proper purpose – for instance, to ask them, "Did you direct Dan to entrap my client?" When the witness gives an adverse response, counsel might attempt to impeach them by asking if they hoped to make money off this case, had been accused of perjury, beat a spouse, or disliked the last president. Rule 608 would prohibit the defendant from introducing extrinsic evidence to back up any of those questions, but the inadmissible material would be before the jury nonetheless.

9

CONCLUSION

For the foregoing reasons, the government requests the Court exclude evidence relating to Exeintel, the unfounded allegations against SA Impola, and Richard Trask's domestic assault charges or alleged social media posts, and preclude the defendants from attempting to introduce that material through a subterfuge of impeachment.

                                               Respectfully submitted,

                                               ANDREW BYERLY BIRGE
                                               United States Attorney

Dated: December 17, 2021         */s/ Nils R. Kessler*
                                               NILS R. KESSLER
                                               Assistant United States Attorney
                                               P.O. Box 208
                                               Grand Rapids, MI 49501-0208
                                               (616) 456-2404
                                               *nils.kessler@usdoj.gov*